Case: 4:24-cv-01552-JMD   Doc. #: 22-1   Filed: 09/30/25   Page: 1 of 10 PageID #:
Case: 4:21-cv-00788-JMD   Doc. #: 212 108 Filed: 09/30/25   Page: 1 of 10 PageID #:
4646

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| DON R. CLARK, JR., et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF ST. LOUIS, et al., | ) | No. 4:21-cv-00788-JMD |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| | ) | |

<u>Order Denying Motion to Substitute Parties</u>

The Missouri General Assembly recently enacted a law transferring control of the St. Louis police force from the City of St. Louis to the State. The question before the Court is whether that law also transferred all the City's related liabilities. The answer is no. States, as sovereigns, are by default immune from damages actions. Courts may interpret statutes to change that default, subjecting a State to damages liability, only when those statutes change the default unequivocally. This statute lacks anything close to a clear statement transferring the City's liabilities to the State. To the contrary, the plain text transfers to the State only the liabilities of "the municipal police department," not the liabilities of the City of St. Louis. <u>Mo. Rev. Stat. § 84.325.3</u>. Because the liabilities in this case were not transferred from the City to the State, the motion to substitute parties will be denied.

**Background**

For well over one hundred years, the St. Louis police force was controlled and operated by a state entity. Then, after a 2012 change in legislation, the City gained local control in 2013. *City of St. Louis Regains Control of Metropolitan Police Department*, Dep't of Public

1

Case: 4:24-cv-01552-JMD    Doc. #: 22-1    Filed: 09/30/25    Page: 2 of 10 PageID #:
Case: 4:21-cv-00788-JMD    Doc. #: 212109Filed: 09/30/25    Page: 2 of 10 PageID #:
4647

Safety, City of St. Louis (Sept. 1, 2013).[1]  But last legislative session, a legislator introduced

a bill to return control of the police force to the State, expressing concern that the police force,

under control of the City, was mismanaged.  *State Rep. Brad Christ Files Legislation to*

*Enhance Public Law Enforcement and Address St. Louis Public Safety Crisis*, Missouri House

of Representatives, Office of State Representative Brad Christ (Dec. 20, 2024);[2] *see also* Sarah

Motter, *Bill to reshape Missouri law enforcement policies overwhelmingly passes House*,

KCTV (Feb. 20, 2025, 12:32 PM CT).[3]    The Missouri General Assembly enacted that

legislation to return the police force to state control and passed an emergency clause to make

the legislation effective immediately instead of effective 90 days after the legislative session,

Mo. Const. art. III § 29.

The statute creates a multi-member state board, the St. Louis Board of Police

Commissioners, which "shall assume control of any municipal police force" in St. Louis. Mo.

Rev. Stat. § 84.325.1.  The legislation directs the preexisting St. Louis Metropolitan Police

Department to "convey, assign, and otherwise transfer" to the Board of Police Commissioners

"title and ownership of all indebtedness and assets, including, but not limited to, all funds

and real and personal property held in the name of or controlled by the municipal police

department." *Id.* § 84.325.2.  Finally, relevant here, the statute instructs the Board to

assume the liabilities of the preexisting police department: "the state shall accept

responsibility, ownership, and liability as successor-in-interest for contractual obligations

---

[1] https://www.stlouis-mo.gov/archives/newsgram/city-regains-control-of-metropolitan-
police-dept.cfm
[2] https://house.mo.gov/PressRelease.aspx?prid=254
[3] https://www.kctv5.com/2025/02/20/bill-reshape-missouri-law-enforcement-policies-
overwhelmingly-passes-house/

2

Case: 4:24-cv-01552-JMD    Doc. #: 22-1    Filed: 09/30/25    Page: 3 of 10 PageID #:
Case: 4:21-cv-00788-JMD    Doc. #: 212 110 Filed: 09/30/25    Page: 3 of 10 PageID #:
4648

and other lawful obligations *of the municipal police department." Id.* § 84.325.3 (emphasis added).

Citing this language, the City and the Office of the Attorney General seek to substitute out the City as a defendant and substitute in the Board members in their official capacities as defendants. Those Board members are Brad Arteaga, Sonya Jenkins-Gray, Edward McVey, Chris Saracino, and St. Louis Mayor Cara Spencer. ECF 183. The plaintiffs oppose. They have brought *Monell* claims against the City based on the City's alleged policies for managing and supervising the police force, and they argue that the statute reassigns only the liabilities of the "municipal police department," not the liabilities of the City.

### Standard of Review

Under Federal Rule of Civil Procedure 25(c), "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." "The decision whether to substitute parties lies within the discretion of the trial judge and he may refuse to substitute parties in an action even if one of the parties so moves." *Froning's, Inc. v. Johnston Feed Service, Inc.*, 568 F.2d 108, 110 n.4 (8th Cir. 1978).

### Analysis

The Court agrees with the plaintiffs that substitution of parties is not proper. That is true for several reasons.

### I.

Start with the plain text. Missouri law transfers to the State only the police department's liabilities, not the City's liabilities. Section 84.325.3 transfers the "lawful obligations of the municipal police department." When interpreting state statutes, federal

3

Case: 4:24-cv-01552-JMD    Doc. #: 22-1    Filed: 09/30/25    Page: 4 of 10 PageID #:
Case: 4:21-cv-00788-JMD    Doc. #: 212.11 Filed: 09/30/25    Page: 4 of 10 PageID #:
4649

courts use the "state court's rules of construction," *Brandt ex rel. Brandt v. Griffin,* 147 F.4th 867, 888 (8th Cir. 2025) (en banc), and the Missouri Supreme Court has held that if "the language of a statute is plain and unambiguous," a reviewing court "is bound to apply that language as written," *State ex rel. Bailey v. Fulton,* 659 S.W.3d 909, 912 (Mo. 2023). The most natural reading of the statute is that it does not transfer any of the City's liabilities to the State. It transfers only the liabilities of the police department.

## II.

The City asks the Court to deviate from the most natural interpretation, arguing that the statute makes no sense unless "police department" is construed to be a synonym for "City" for liabilities arising from the City's operation of the municipal police department. In support, the City suggests that the police department had no liabilities in its name; every liability related to the police department was held in the name of the City (although the City expressed some uncertainty about this assertion at a hearing). This argument has some force. Section 1983 suits are typically brought against a municipality, not a police department, *e.g., El-Alamin v. Radke,* 369 Fed. Appx. 770, at *1 (8th Cir. 2010), because municipal police departments typically are "simply departments or subdivisions of the City government," *Ketchum v. City of West Memphis,* 974 F.2d 81, 82 (8th Cir. 1992). If the police department in fact had no liabilities, then applying the most natural meaning of the text might give the text no practical effect at all; there would be no liabilities to transfer. "When interpreting statutes, courts do not presume that the legislature has enacted a meaningless provision." *Edwards v. Gerstein,* 237 S.W.3d 580, 581 (Mo. 2007).

But if departing from the most natural reading might be justified to transfer *some* of the City's liabilities, it does not follow that the statute transfers *all* City liabilities related to

4

Case: 4:24-cv-01552-JMD   Doc. #: 22-1   Filed: 09/30/25   Page: 5 of 10 PageID #:
Case: 4:21-cv-00788-JMD   Doc. #: 212 112 Filed: 09/30/25   Page: 5 of 10 PageID #:
4650

the police force.  At most, the statute transfers those liabilities related to contracts, debts, utilities, and the like.

Consider first the express mention in the statute of "contractual obligations."  Section 84.325.3 says "the state shall accept responsibility, ownership, and liability as successor-in-interest for *contractual* obligations *and other* lawful obligations of the municipal police department" (emphasis added).  If the legislature had intended to transfer every liability, there would have been no need to expressly identify contractual liabilities.  That inclusion narrows the scope of the statute.  When a specific provision (like "contractual") is paired with a more general provision (like "other"), the specific term "limit[s] a general term to a subset of all the things or actions that it [could] cover[]."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195–96 (2012); *see also Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 5 (Mo. 2012).  Here, the legislature's decision to expressly include "contractual obligations" suggests the statute could be interpreted to transfer at most contractual obligations and similar obligations.

The same can be said of the subsection immediately preceding subsection 84.325.3.  It instructs the St. Louis Police Department to "convey, assign, and otherwise transfer to the Board title and ownership of all indebtedness and assets, including, but not limited to, all funds and real and personal property held in the name of or controlled by the municipal police department."  Mo. Rev. Stat. § 84.325.2.  Considering the specific enumerations in subsections 2 and 3, "other lawful obligations" can be interpreted to transfer only liabilities similar to those enumerated.  Scalia & Garner, *Reading Law*, at 199–200; *Circuit City Stores, Inc. v. Director of Revenue*, 438 S.W.3d 397, 401 (Mo. 2014).  Subsections 2 and 3, working together, contemplate transfer of contracts, debts, real property, and the like.

5

Case: 4:24-cv-01552-JMD    Doc. #: 22-1    Filed: 09/30/25    Page: 6 of 10 PageID #:
Case: 4:21-cv-00788-JMD    Doc. #: 212-13 Filed: 09/30/25    Page: 6 of 10 PageID #:
4651

Different from all these is the category of liabilities at issue here: *Monell* liabilities. Liability under *Monell* stems not from the actions of a police department (at least not directly), but instead from the actions of a municipality with final authority *over* that department. "Section 1983 liability for constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' . . . (2) an unofficial 'custom,' . . . or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), and citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

In other words, *Monell* liabilities differ from other liabilities because of where they originate. A police department's utility bill or contractual obligation most directly concerns the police department's obligations. Either of those obligations might properly be said to be a "liability . . . of the municipal police department," Mo. Rev. Stat. § 84.325.3, even if held in the name of the City. A *Monell* claim, in contrast, arises from actions done *by* the City often *to* a police department, such as imposing binding rules and regulations on the police department.[4] *Monell* applies to injuries "'caused' by . . . municipal 'policy,'" *City of Oklahoma*

---

[4] It is unclear from the record how much the *Monell* claims depend on actions the City undertook directly as opposed to actions the City undertook indirectly by delegating authority to individuals within the police department. But that makes no difference because that delegation is still an act of the City imposed on the police department, and any delegation would be limited by rules and policies adopted by the City and imposed on the police department. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 485 (1986) (holding a county liable under § 1983 for the decision of a county prosecutor who was delegated authority by law and "was acting as the final decisionmaker for the county"); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) (O'Connor, J., for four justices) (observing that if "a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose"). "[W]hether an official had final policymaking authority is a question of state law." *Praprotnik*, 485 U.S. at 124. Here, the 2012 state law that transferred authority from a state agency to the City vested *the City*, not the municipal police department, with the authority to govern the police

6

Case: 4:24-cv-01552-JMD    Doc. #: 22-1    Filed: 09/30/25    Page: 7 of 10 PageID #:
Case: 4:21-cv-00788-JMD    Doc. #: 212 14 Filed: 09/30/25    Page: 7 of 10 PageID #:
4652

*City v. Tuttle*, 471 U.S. 808, 823 (1985) (quoting *Monell*, 436 U.S. at 691), so a liability for a

*Monell* claim is not a liability "of the municipal police department." Mo. Rev. Stat. § 84.325.3.

It is a liability "of the city."

So even assuming that the police department held no liabilities in its own name,

courts can still give meaning to this statute without adopting the City's wholesale departure

from the most natural reading of the text. The Court need not—and cannot, on this record—

enumerate all liabilities that might plausibly be transferred under this statute. It is enough

to conclude that if the statute transfers liabilities incurred by the police department in the

name of the City, those liabilities are contractual liabilities, utilities obligations, and the like.

The text transferring only liabilities "of the municipal police department" cannot be stretched

to include the "City's" liabilities for injuries caused by the City's policies.

### III.

The doctrine of sovereign immunity reinforces this conclusion. The City's argument

runs headlong not only into the most natural reading of the statute, but also into the

longstanding principle that States do not voluntarily take on liabilities absent an

unequivocally clear statement of intent to do so. "Suits against state officials in their official

capacity" are "treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). And

States, by default, are entitled to immunity from damages actions. *Alden v. Maine*, 527 U.S.

---

force. Mo. Rev. Stat. § 34.344.8 (2012) (providing that if St. Louis "elects to establish a municipal police force under this section, the city shall establish a separate division for the operation of its municipal police force") (repealed by H.B. 495, 103rd Gen. Assemb., 1st Reg. Sess. (Mo. 2025) (effective Mar. 26, 2025)); *id.* § 84.345.3 (providing that St. Louis "shall not be restricted or limited in any way in the selection of a police chief or chief of the division created under subsection 8 of section 84.344") (repealed by H.B. 495, 103rd Gen. Assemb., 1st Reg. Sess. (Mo. 2025) (effective Mar. 26, 2025)). *Monell* liability is properly the City's liability, not the municipal police department's liability.

7

Case: 4:24-cv-01552-JMD    Doc. #: 22-1    Filed: 09/30/25    Page: 8 of 10 PageID #:
Case: 4:21-cv-00788-JMD    Doc. #: 212115Filed: 09/30/25    Page: 8 of 10 PageID #:
4653

706, 713 (1999) (explaining that "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today"). That immunity remains unless and until the State "(1) voluntarily invoke[s] federal court jurisdiction or (2) make[s] a clear declaration that it intends to submit itself to our jurisdiction." *Harmon v. Preferred Family Healthcare, Inc.*, 125 F.4th 874, 882 (8th Cir. 2025) (cleaned up); *see also* Scalia & Garner, *Reading Law*, at 282–84.

Here, the State has done neither. It was the plaintiffs who invoked this Court's jurisdiction. Although the Attorney General moved for substitution of the City as a defendant for the state Board, the State's brief asserts that it retains sovereign immunity. Def's. Resp. to Ct. Ord., at 3-4, ECF 205. The Attorney General's motion thus is not a "'clear' indication of the State's intent to waive its immunity." *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002); *Maysonet-Robles v. Cabero*, 323 F.3d 43, 52 (1st Cir. 2003) ("the State's litigation conduct must be unambiguous"). The statute likewise contains no clear statement transferring the City's *Monell* liabilities. Section 84.325 does not use "the most express language" to waive immunity—it does the opposite—and there are "reasonable construction[s]" of the text other than that it waives Missouri's immunity. *Hankins v. Finnel*, 964 F.2d 853, 856 (8th Cir. 1992). Section 84.325 does not contain a clear declaration waiving Missouri's immunity from *Monell* suits in federal court. *Cf. Maysonet-Robles*, 323 F.3d at 50–51.

Citing *Maysonet-Robles* from the First Circuit, the City argues that the Court could substitute the parties and then later find that the State still retains sovereign immunity. That puts the cart before the horse. Neither party in *Maysonet-Robles* appealed the district court's decision to substitute parties, so the First Circuit did not address whether the motion

8

should have been granted. *Id.* at 48. Here, the Court must determine whether to grant the motion. This Court need not definitively resolve the issue of sovereign immunity before addressing the substitution motion. "[I]t is the entity's *potential* legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant" for sovereign immunity analysis. *See Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 431 (1997) (emphasis added).

Even assuming that the State accepted liability for contracts and the like, a clear statement would still be needed to transfer the City's *Monell* liability. "Statutory provisions waiving sovereign immunity are strictly construed." *Allen v. 32nd Jud. Cir.,* 638 S.W.3d 880, 891 (Mo. 2022). This includes strictly construing the scope of a waiver. *See id.* at 891–92; *see also Lane v. Pena,* 518 U.S. 187, 192 (1996) (explaining that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign"). Voluntarily agreeing to one category of liabilities is not, without an additional clear statement, sufficient to waive immunity for other categories of liabilities.

Finally, the sovereign immunity issue cautions against substitution of parties because that issue remains contested. "Rule 25(c) substitution implements a discretionary determination by the trial court to facilitate the conduct of the litigation, so it is a procedural vehicle not designed to create new relationships among parties to a suit." *Maysonet-Robles,* 323 F.3d at 49; *Matter of Covington Grain Co., Inc.,* 638 F.2d 1362, 1364 (5th Cir. 1981) ("Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands."). Because the Board members may be able to assert a defense not available to the City, they are not in an "identical position" to the City. *ELCA Enters., Inc. v. Sisco Equip. Rental &*

9

Case: 4:24-cv-01552-JMD   Doc. #: 22-1   Filed: 09/30/25   Page: 10 of 10 PageID
Case: 4:21-cv-00788-JMD   Doc. #: 212 11Filed: 09/30/25   Page: 10 of 10 PageID #:
4655

*Sales, Inc.,* 53 F.3d 186, 191 n.5 (8th Cir. 1995). The potential of the Board members raising a sovereign immunity defense, preventing this suit from continuing, cautions against substitution.

## Conclusion

**IT IS HEREBY ORDERED** that the motion for substitution of parties is **DENIED.** ECF 183.

Especially because this issue is common to many different cases in Missouri federal courts, the Court certifies that this order satisfies the requirements for an interlocutory appeal. 28 U.S.C. § 1292(b).

Dated this 30th day of September, 2025

JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE