IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AUNHK RA AUNHKHOTEP, | ) |
| *Plaintiff*, | ) |
| v. | ) No. 4:24-cv-01552-JMD |
| HERBERT EBERHART, | ) |
| *Defendant*. | ) |

## MEMORANDUM AND ORDER

For unstated reasons, plaintiff Aunhk Ra Aunhkhotep tried to enter the Assessor's Office at St. Louis City Hall to video record individuals inside. A law enforcement officer prohibited him from doing so. Aunhkhotep sued the officer under § 1983, asserting claims that could be construed as alleging violations of both the First Amendment and the Fourth Amendment. But Aunhkhotep has neither stated a constitutional violation, nor proven that any applicable right under either amendment was clearly established. As to the First Amendment, Aunhkhotep asserts an untrammeled right to video record any public official working in any public space. That right is defined at far too high a level of generality and would mean that the Supreme Court violates the Constitution by not permitting individuals to video record oral arguments. Nor has Aunhkhotep stated a violation of the Fourth Amendment. He asserts that the officer prevented him from entering a lobby. But there is a stark difference between locking somebody *in* (a seizure under the Fourth Amendment) and locking somebody *out*. The latter, under Eighth Circuit precedent, generally does not violate the Fourth Amendment. The Court thus grants the officer's motion to dismiss.

1

**Background**

When reviewing a motion under Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the nonmovant's favor. *Healy v. Fox,* 46 F.4th 739, 743 (8th Cir. 2022). But the Court is not bound by legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged in the complaint are therefore accepted as true for purposes of this motion to dismiss, and all doubt is resolved in Aunhkhotep's favor.

Aunhkhotep's complaint names one defendant: City of St. Louis Police Officer Herbert Eberhart,[1] in his individual capacity. ECF 1 at 1–2. He seeks relief under 42 U.S.C. § 1983, stating the allegations in his own words as follows:

> On April 5, 2024, Plaintiff attempted to access the lobby area to the Assessor's Office at City Hall to record and request agency records under Missouri Sunshine Law. Defendant Ebberhart [sic] threatened Plaintiff with trespass and arrest had Plaintiff entered the lobby area. Defendant stood in Plaintiff's path, stopped Plaintiff from proceeding forth into the lobby area. Plaintiff could not exercise right to record inside lobby area or submit written request for Missouri public records. Plaintiff left the building with threat of removal from building and threat of arrest.

*Id.* at 3, 5.

Aunhkhotep claims that Eberhart: (1) "refused to permit Plaintiff access inside the lobby area of Assessor's Office" and (2) "denied Plaintiff to enter lobby area to submit records request." *Id.* at 5. He seeks $150,000 in punitive damages and $150,000 in emotional damages. *Id.* at 6.

Before this case was reassigned to a new judge, the Court granted Aunhkhotep *in forma pauperis* status and completed an initial frivolity review under 28 U.S.C. § 1915,

---

[1] The complaint listed "Police Officer Ebberhart." ECF 1 at 1. The officer was later identified as Officer Herbert Eberhart. ECF 9.

2

during which the Court noted that Aunhkhotep cited case number "4:24-cv-00703-NCC" as a "related" case on the civil cover sheet and original filing form submitted with the complaint in this matter. ECF 6 at 1, 3–4. That case contained allegations stemming from the same incident. Eberhart was dismissed from that case for improper joinder. *Aunhkhotep v. Doe et al.*, No. 4:24-cv-00703- NCC; *see* ECF 10; ECF 11 (E.D. Mo., Oct. 29, 2024). In that earlier case, Aunhkhotep more clearly stated that he believed the officer had violated the First Amendment and Fourth Amendment. The Court used the complaint in that case to construe the current complaint as alleging two claims: (1) a First Amendment violation for infringing his right to record government officials, and (2) a Fourth Amendment violation for unreasonable seizure for being forced to leave the building under threat of trespass or arrest. Eberhart moves to dismiss both claims.

**Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016) (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).

On a motion to dismiss, the Court accepts all the factual allegations contained in the complaint as true, even if it appears that "actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that

3

the pleader is entitled to relief, *id.* at 555–56; Fed. R. Civ. P. 8(a)(2). "This tenet does not apply, however, to legal conclusions or formulaic recitation of the elements of a cause of action; such allegations may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (cleaned up). The facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**Analysis**

To survive Eberhart's motion to dismiss, Aunhkhotep must allege sufficient facts to support an underlying constitutional or statutory violation. Section 1983 is not a source of substantive rights but instead acts as "a vehicle for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Henley v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012) (citations omitted). "Accordingly, an underlying constitutional or statutory violation is a predicate to liability under section 1983." *Id.* Aunhkhotep has not satisfied this standard for either claim. His complaint is too bare bones and thus fails independently of the Court's qualified immunity analysis. But in any event, Eberhart is entitled to qualified immunity on both counts.

**I.   Aunhkhotep's bare-bones complaint fails to plead a First Amendment violation.**

Aunhkhotep's pleading is insufficient as a matter of form. One problem is his decision to ambiguously cite filings in an earlier case rather than to submit those filings in this case. It is not clear whether Aunhkhotep intended to incorporate those filings into the present case, but assuming he did, his complaint runs headlong into "the general rule that incorporation by reference from other cases is not permitted." *Spirit Lake Tribe v. Jaeger*, No. 1:18-cv-222,

4

2019 WL 13299003, at *2 (D.N.D. June 17, 2019) (collecting cases).  That is because incorporation-by-reference is "highly problematic, confusing, and inconvenient." *Id.* at *1–2 ("[Rule 10(c)] does not contemplate the incorporation by reference of statements made in a pleading in another case").  Here, Aunhkhotep made bare allegations and filed a "Motion Requesting Court to Take Judicial Notice" of an earlier case.  ECF 2.  In determining whether the pleading was "frivolous," 28 U.S.C. § 1915, the judge formerly assigned to this case had to construe this complaint in light of the allegations in the earlier case based on the same facts.  But "[j]udges are not like pigs, hunting for truffles." *Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004) (citation omitted).  Neither are defendants.  Aunhkhotep's threadbare complaint is insufficient on its face.

Second, even if the Court set aside the first problem, Aunhkhotep has failed to plead sufficient facts to establish that his conduct amounted to speech.  Conduct *can* be speech; the First Amendment "affords protection to symbolic or expressive conduct as well as to actual speech." *Virginia v. Black*, 538 U.S. 343, 358 (2003).  And the First Amendment protects the creation of speech, not just its distribution, so filming can be protected under the First Amendment in many circumstances. *See Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021) ("If the act of making a photograph or recording is to facilitate speech that will follow, the act is a step in the speech process, and thus qualifies itself as speech protected by the First Amendment." (citation omitted)).  But to plead a claim under the First Amendment based on conduct, Aunhkhotep must plead at minimum (1) "[a]n intent to convey a particularized message" and (2) that "in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Baribeau v. City of*

5

*Minneapolis*, 596 F.3d 465, 475 (8th Cir. 2010) (quoting *Spence v. State of Wash.*, 418 U.S. 405, 410–11 (1974)).

Aunhkhotep has not alleged any facts to establish that he intended to convey any message at all.  He simply stated a general desire to record the lobby area of the Assessor's Office without alleging any intent to display the video later.  "Though *pro se* complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced."  *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citation omitted).  Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint."  *Id.* at 915.  Giving a *pro se* complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted to excuse mistakes by those who proceed without counsel.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993).  But for the gloss on the complaint provided on frivolity review, Eberhart would have had *no* notice of a claim under the First Amendment at all.  Aunhkhotep failed to plead a First Amendment violation.

**II.    Eberhart is entitled to qualified immunity for the claim that he violated the First Amendment.**

The complaint also fails to state a claim under the First Amendment for an independent, alternative reason: Eberhart is entitled to qualified immunity.  "Qualified immunity shields a government official from suit under § 1983 if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When a party invokes qualified immunity as a defense, the court "must answer two questions" on which the other party has the burden: "First, did the officers violate a constitutional right?  Second, was the right clearly established?"  *Molina v. City of*

6

*St. Louis*, 59 F.4th 334, 337–38 (8th Cir. 2023).  "If the answer to either question is no," then the defendant is entitled to qualified immunity.  *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010).  Aunhkhotep asserts a broad, untrammeled right to video record "government agents in the performance of their duties" in "public spaces."  ECF 14 at 2.  That right neither exists nor was clearly established.

### A.

The untrammeled right asserted by Aunhkhotep does not exist because "[e]ven protected speech is not equally permissible in all places and at all times.'"  *Snyder v. Phelps*, 562 U.S. 443, 457 (2011) (citing *Frisby v. Schultz,* 487 U.S. 474, 479 (1988)).  Nobody has a right under the First Amendment to film the Supreme Court at oral arguments, even though the Justices are "government agents in the performance of their duties" in "public spaces."  The Constitution permits a wide variety of "reasonable time, place, or manner regulations" in public forums—and even "some content-based restrictions on speech in nonpublic forums."  *Minn. Voters All. v. Mansky*, 585 U.S. 1, 11–12 (2018).

Aunhkhotep's complaint misperceives the differences between different kinds of government property.  His complaint conflates "open to the public" with "public forum," but these terms are not interchangeable.  Supreme Court "cases recognize three types of government-controlled spaces: traditional public forums, designated public forums, and nonpublic forums."  *Id.*, 585 U.S. at 11.  While the government may restrict speech in the first two fora only by imposing "reasonable time, place, and manner restrictions," the government may reserve the latter forum "for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."  *Id.* (citation omitted).

7

Nothing suggests the Assessor's lobby was anything other than a nonpublic forum, the purpose of which was conducting tax business. *See Families Achieving Independence and Respect v. Neb. Dep't of Soc. Servs.*, 111 F.3d 1408 (8th Cir. 1997) (holding that the lobby of a County Office of the Nebraska Department of Public Services was a nonpublic forum). A "property is not transformed into 'public forum' property merely because the public is permitted to freely enter and leave the grounds at practically all times and the public is admitted to the building during specified hours." *United States v. Grace*, 461 U.S. 171, 178 (1983) (citing *Greer v. Spock,* 424 U.S. 828, 836 (1976)). Speech in a nonpublic forum can be restricted as long as the restrictions are "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983).

The purpose of the Assessor's lobby is not to create a public square for free speech, but to enable access to the office for persons to complete tax-related business. Just as the Supreme Court determined it was reasonable to restrict solicitation on a public sidewalk outside a post office because that sidewalk "was constructed solely to provide for the passage of individuals engaged in postal business," *United States v. Kokinda*, 497 U.S. 720, 727 (1990), so too Aunhkhotep has failed to cite anything to suggest that the Assessor's lobby was constructed for any public expressive purpose, rather than for individuals to engage in tax business.

Another fundamental flaw with Aunhkhotep's assertion is that he frames the right he asserts at far too high of a level of generality. To the extent it is true that there is a right under the First Amendment to film certain public officials at certain work in certain locations, it is *not* true that the First Amendment creates a high-level right to video record

8

"government agents in the performance of their duties" in "public spaces." ECF 14 at 2; *see also Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021) ("Assuming Robbins had a constitutionally protected right to record as he was doing in this case, that right is not absolute."). Aunhkhotep did not have an unlimited First Amendment right to film inside the lobby of the St. Louis County's Assessor's Office simply because the lobby included public officials at work in a public building. His claim therefore fails the first prong of the qualified immunity analysis.

**B.**

Aunhkhotep's suit also fails because, even assuming this untrammeled right existed, it was not clearly established. "For a right to be clearly established, the law must have been sufficiently clear, at the time of the officer's conduct, to put every reasonable officer on notice that what he was doing violated that right." *Thompson v. Cockrell*, No. 24-2120, 2025 WL 2657074, at *3 (8th Cir. Sept. 17, 2025). "'Existing precedent,' in other words, must have put the issue 'beyond debate.'" *Molina,* 59 F.4th at 338 (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Additionally, "the clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019). Aunhkhotep has failed to cite precedent establishing "beyond debate" an unlimited right to film government employees in any public place, and the Court has located none.

Aunhkhotep tries to establish this right by focusing on precedent about recording police officers on public streets. That, on its own, is telling. Even assuming there is a clearly established right to record police officers on public streets, the Court cannot infer the much broader right Aunhkhotep asserts: the right to record any public official—such as officials in the Assessor's Office—conducting work in any public place. Case law about recording police

9

officers on public streets says little about whether there is a right to record government officials (and private citizens) in the lobby of a tax assessor's office or Supreme Court Justices conducting oral argument at One First Street. (Aunhkhotep has not asserted that he was trying to record Eberhart; he wanted "to record" in the lobby of the Assessor's Office.)

Even the right to record police officers on public streets is not clearly established. The Eighth Circuit said so just two years ago. *Molina*, 59 F.4th at 338–40. *Molina* acknowledged that some previous Eighth Circuit precedent had included imprecise language suggesting otherwise. The Eighth Circuit in 2020 had stated that there is a "clearly established right to watch police-citizen interactions at a distance and without interfering." *Id.* at 339 (quoting *Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020)). But *Molina* made clear that *Wallace* and other similar cases are limited to their Fourth Amendment contexts, and *Molina* squarely held that "recording police-citizen interactions was not a *clearly established* First Amendment right in 2015," when the alleged facts at issue in *Molina* occurred. *Id.* at 338 (emphasis in original).

So if the right was not clearly established in 2015, when the events in *Molina* occurred, what about in 2024? Again, the Court has not located case law establishing that right beyond debate. In assessing this question, the Court looks not only to the Eighth Circuit but also to other courts because, "in the absence of binding precedent, a court should look to all available decisional law, including decisions of state courts, other circuits and district courts." *K.W.P. v. Kansas City Pub. Schools*, 931 F.3d 813, 828 (8th Cir. 2019) (citation omitted). Several circuits do recognize a right to record police in certain public places. *E.g.*, *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995); *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Fields v. City of Philadelphia*, 862 F.3d 353 (3d Cir. 2017); *Turner v. Lieutenant Driver*, 848 F.3d 678

(5th Cir. 2017); *Irizarry v. Yehia*, 38 F.4th 1282 (10th Cir. 2022). But much of this precedent predates 2015 and was not sufficient for the Eighth Circuit in *Molina* to hold that the right to record police in public was clearly established. Later cases postdating 2015 similarly relied on pre-2015 precedent. Most of those cases predate *Molina*, but *Molina* never suggested that the right to record police became clearly established after 2015.

Just the opposite. Because a right is not clearly established unless it is "beyond debate," a decision "shedding doubt on" a right is often enough to grant qualified immunity. *See Irizarry*, 38 F.4th at 1294 (citation omitted). *Molina* cited authority "shedding doubt" on Aunhkhotep's suggested right: the Supreme Court has held that individuals have "no constitutional right to observe the issuance of a traffic ticket." *Molina*, 59 F.4th at 339 (quoting *Colten v. Kentucky*, 407 U.S. 104, 109 (1972)). In that Supreme Court case, in response to the petitioner's assertion that he had a right under the First Amendment to "observ[e] the issuance of a traffic citation," the Supreme Court described this asserted right as "a strained, near-frivolous contention." *Colten*, 407 U.S. at 109. Traffic tickets are issued in public by police and can be observed by video recording. If there is no right to record or observe police in that circumstance, Aunhkhotep's much broader asserted right must not exist. It is true, of course, that a number of circuits have nonetheless interpreted the First Amendment to create that right, but none of the out-of-circuit cases described above assesses *Colten*. At the very least, *Colten* provides sufficient doubt. The matter at issue is not "beyond debate."

And again, whatever the merits of the argument that the First Amendment guarantees the right to film *police officers* on *public streets*, Aunhkhotep cannot extrapolate that to the much broader right to film any public official working in any public place. The

11

Supreme Court has "repeatedly told courts … not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citations omitted).  There is no right under the First Amendment to record Supreme Court oral arguments, jury deliberations, or meetings between Senators and constituents—even though all these entail work by public officials in public buildings.

Courts have not concluded that an unlimited right to film public officials in public locations exists.  While some courts have found a right to record police encounters in public streets, the Eighth Circuit has declined to adopt that standard, that standard is in tension with Supreme Court precedent, and Aunhkhotep has failed to show that a general right to record in nonpublic fora was clearly established at the time of this incident.  Eberhart is entitled to qualified immunity here.

### III. Eberhart is entitled to qualified immunity for the claim under the Fourth Amendment.

Aunhkhotep's complaint also fails to state a claim under the Fourth Amendment that he was unlawfully seized.  He asserts that officials prevented him from entering the lobby of the Assessor's office and that he "left the building with threat of removal from building and threat of arrest."  Aunhkhotep has neither stated a valid right under the Fourth Amendment nor established that the asserted right was clearly established.

First, Aunhkhotep was not seized within the meaning of the Fourth Amendment because his liberty was not restrained in any constitutionally relevant manner.  A claim of unreasonable seizure under the Fourth Amendment has two elements: there must be a seizure, and it must be unreasonable. *Andrews v. Fuoss*, 417 F.3d 813, 816 (8th Cir. 2005). "A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." *Quraishi v. St. Charles Cnty.*, 986 F.3d 831,

839 (8th Cir. 2021) (citation omitted). Aunhkhotep was not arrested. Nor does he allege that physical force was used at any time during this incident. His liberty was not restrained—he was not only free to leave but was instructed to do so.

In arguing otherwise, Aunhkhotep says that precedent holds that an officer performs a seizure when he prevents a person from *leaving*. The Supreme Court has suggested that the "blocking of exits" can sometimes amount to seizure. *See United States v. Drayton*, 536 U.S. 194, 204 (2002). But the gulf between blocking an exit and blocking an entrance is enormous. Putting an inmate behind bars undoubtedly amounts to a seizure. But prohibiting the public from entering an inmate's cell is something else entirely. The Eighth Circuit has repeatedly held that officers do not seize a person when they simply force a person to move on. For example, in response to the assertion that plaintiffs were seized by the deployment of a tear gas canister "because they could not stay in their chosen location," the Eighth Circuit concluded that no seizure occurred because each individual was able to leave the scene. *Quraishi*, 986 F.3d at 840; see *Johnson v. City of Ferguson*, 926 F.3d 504 (8th Cir. 2019) (no seizure when plaintiff was asked to move from street to sidewalk). When an ICE official pushed an individual "to 'repel' her from entering the federal facility," no seizure occurred. *Martinez v. Sasse*, 37 F.4th 506, 509 (8th Cir. 2022). So too here. Aunhkhotep was not seized when the officer blocked him from entering a room.

At the very least, the right Aunhkhotep asserts is not clearly established. Eighth Circuit precedent is against Aunhkhotep. The Second Circuit appears to agree. *E.g.*, *Salmon v. Blesser*, 802 F.3d 249 (2d Cir. 2015) ("[A] police order to leave an area, without more, does not effect a seizure of the person so ordered."). At least one court, the Sixth Circuit, has precedent that, broadly read, might support Aunhkhotep. *Bennett v. City of Eastpointe*, 410

13

F.3d 810, 834 (6th Cir. 2005) ("[A] person is seized not only when a reasonable person would not feel free to leave an encounter with police, but also when a reasonable person would not feel free to *remain* somewhere, by virtue of some official action."). But to the extent a split in authority exists, it undermines the notion that the right Aunhkhotep asserts was clearly established—that is, "beyond debate." *Molina*, 59 F.4th at 338.

Further, any seizure that did occur was reasonable and thus did not violate the Fourth Amendment. "The touchstone of the Fourth Amendment is reasonableness." *Florida. v. Jimeno*, 500 U.S. 248, 251 (1991). A seizure is reasonable if the totality of the circumstances establishes it is reasonable, as "judged from the perspective of a reasonable officer on the scene without regard to the underlying intent or motivation." *Andrews*, 417 F.3d at 817 (citation omitted). Aunhkhotep has cited no precedent or history supporting the idea that barring a person from recording in the lobby of a tax office is constitutionally unreasonable. To the contrary, "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Leg. Def. and Educ. Fund, Inc.*, 473 U.S. 788, 800–01 (1985). A tax office is a place where people—not just government officials, but also private citizens—tend to carry highly sensitive documents. For good reason, federal law penalizes by up to 5 years in prison individuals who disclose certain tax information without authority. 26 U.S.C. § 7213(a)(1).

The Supreme Court has recognized time and again that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981) (noting that

the Court has upheld access restrictions to military bases, jails, prisons, and advertising space in city rapid transit cars). "There is little doubt that in some circumstances the Government may ban the entry on to public property that is not a 'public forum' of all persons except those who have legitimate business on the premises. The Government, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated." *Grace*, 461 U.S. at 178.

Further, under Missouri law, "[a] person commits the offense of trespass in the first degree if he … *knowingly remains unlawfully* in a building or inhabitable structure or upon real property … which notice against trespass is given by … [a]ctual communication to the actor." Mo. Rev. Stat. § 569.140 (emphasis added). The privilege to be on government property can be revoked under Missouri law. *See State v. Guess*, 804 S.W.2d 57 (Mo. App. W. Dist. 1991) (upholding trespass conviction after defendant was asked to leave police station lobby and failed to comply). After Aunhkhotep was asked to leave, remaining on the premises may have violated Missouri law.

Eberhart acted reasonably. But even if he did not, he is entitled to qualified immunity. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Under

15

the allegations in this complaint, Eberhart neither was plainly incompetent, nor did he knowingly violate the law.

**IT IS HEREBY ORDERED** that Eberhart's motion to dismiss is GRANTED with prejudice.

Dated this 28th day of October, 2025

_____
JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE